UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CIARA DAWKINS,

    Movant,

v.                                                              Case No. 2:16-cv-00569
                                                                         Case No. 6:12-cr-00059-1

UNITED STATES OF AMERICA,

    Respondent.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 [ECF No. 352] and two Addenda, which the court treats as amendments to the initial motion. (ECF Nos. 362 and 363).[1] This matter is now assigned to the undersigned United States District Judge and is referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the court, it is hereby **ORDERED** that the referral to the Magistrate Judge is **WITHDRAWN**.

---

[1] Movant filed the first Addendum [ECF No. 362] on May 5, 2016. Then, on May 6, 2016, the Clerk's Office received and docketed another Addendum [ECF No. 363], which appears to be a copy of the first Addendum, but with a different version of the exhibits. Because the second version of the Addendum contains different and enumerated exhibits, the court will consider the second version as the operative document.

## I. Relevant Procedural History

On April 2, 2013, Defendant was named in a second superseding indictment charging her with one count of conspiracy to distribute oxycodone and oxymorphone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of aiding and abetting possession with intent to distribute oxymorphone, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. [ECF No. 369, Ex. 4]. A jury trial was held between July 9 and 11, 2013. Throughout her criminal proceedings, Defendant was represented by court-appointed counsel, John H. Tinney, Jr. ("Tinney").

Defendant's charges arose following her arrest in Wood County, West Virginia, in the course of a controlled buy initiated by Jason McClure ("McClure"), a confidential informant ("CI"), who had previously been arrested in Ohio and charged with possession with intent to distribute approximately 900 oxycodone and oxymorphone tablets.

DEA Task Force Officer Herb Shelton ("Shelton") met with McClure following his arrest on January 10, 2012. McClure admitted that he had been involved in a million-dollar drug distribution scheme and he disclosed that he owed his source of supply $4,500. McClure agreed to cooperate with the government and he was provided $4,500, which he deposited in two Chase Bank accounts, one of which was in Defendant's name. [ECF No. 369 at 2-3 and Ex. 1 at 119-124].[2] According to Shelton, McClure also agreed to the placement of a recording device on his cell phone,

---

[2] The page citations from the transcripts cited herein are derived from the CM/ECF docket entry page numbering located at the top of each page of Exhibits 1 and 5. For example, the first page of this citation from Exhibit 1 reads "Page 124 of 416."

2

which captured recordings from February 1-3, 2012. McClure also agreed to act as a CI for a controlled buy from Defendant on February 3, 2012. [*Id.* at 123-126].

McClure testified at Defendant's trial, pursuant to a plea agreement, following his guilty plea to one count of conspiracy to distribute oxycodone. However, he had not yet been sentenced on that charge. McClure told the jury that, at the time of his arrest in January of 2012, he advised the DEA agents that he had received the pills in his possession earlier that day from Defendant, Shavona Starkling, and a third female whom he did not recognize. He further indicated that he knew Defendant and Starkling from prior drug deliveries. McClure confirmed that his primary drug source over the two years leading up to his arrest was Mack Brooks, and that he would meet Brooks and/or various females, including Defendant and Starkling, on a weekly basis to obtain pills from them. [ECF No. 349 at 4 and Ex. 1 at 169-179].

McClure testified that "at the beginning [he purchased] maybe 100, 200, and at the end around 1,000 pills." [ECF No. 369 at 4 and Ex. 1 at 176]. He further stated that, after Brooks went to prison, he continued to have contact with him to order pills, which were delivered by Defendant and other females, including Starkling. [*Id.* at 177-179]. He confirmed that his last communication with Brooks was on February 3, 2012, the date of the controlled buy resulting in Defendant's arrest. [*Id.* at 179].

McClure further testified about the drugs that were in his possession when he was arrested on January 10, 2012. He stated that he had paid between $25,000 and $30,000 in cash when he obtained those drugs, but still owed approximately $4,500. He stated that the DEA provided him with that sum of money, which, upon

3

Defendant's instruction, he deposited into two bank accounts, one of which was in Defendant's name. [ECF No. 369 at 4 and Ex. 1 at 170-172, 180-181].

McClure further confirmed that he had consented to the placement of a recording device on his cell phone, which captured several recorded phone calls between himself and Defendant, with Mack Brooks "three-wayed" in from prison on all but one of the calls. [*Id.* at 4 and Ex. 1 at 182-185, 193-194]. The recorded calls were played for the jury, while McClure gave explanations as to the meaning and context of some of the conversations. [*Id.* at 4-5 and Ex. 1 at 188-197]. Significantly, McClure identified Defendant as the person referred to as "C" in one of the recorded conversations, and explained that meant that he would set up the February 3, 2012 drug delivery with Defendant. [*Id.* at 194]. McClure also testified about the controlled buy on February 3, 2012, stating that he had made arrangements with Defendant to purchase whatever pills she had left at that time. [*Id.* at 5 and Ex. 1 at 197-201].

On cross-examination, McClure suggested that he had paid Brooks over one million dollars during the two-year period he had dealt with him, and he identified "four or five or six" different females who delivered pills for Brooks, in addition to Defendant and Starkling. [*Id.* at 5 and Ex. 1 at 209, 232-233].

At the time of their arrest, a condom full of pills was recovered from Starkling's vaginal cavity and taken into possession by Detective S.L. Modesitt ("Modesitt"). Modesitt was also present for searches of Defendant for pills. However, no pills were located in her vaginal cavity. Modesitt testified that she heard Defendant say that

4

"it had either gone further up and she couldn't reach it or it had fallen out." [ECF No. 369 at 5-6 and Ex. 1 at 241-247, 250-253]. Another Wood County Deputy Sheriff, G.M. Deem, testified that a similar condom of pills was located inside Defendant's vehicle on that date. [*Id.* at 6 and Ex. 1 at 255-256]. A DEA chemist confirmed that the pills seized on February 3, 2012 contained oxymorphone. [ECF No. 369 at 7 and Ex. 1 at 332].

Starkling also testified at Defendant's trial pursuant to a plea agreement with the United States. She had previously pled guilty to aiding and abetting possession with intent to distribute oxymorphone and had been sentenced to serve 46 months in prison. [ECF No. 369 at 6 and Ex. 1 at 265-267, 288]. Starkling stated that, after receiving a call from Brooks and Defendant, she met with Defendant at a residence in Detroit, Michigan on February 3, 2012, and received a condom filled with pills, which she inserted into her vagina. Then, she, Defendant, and another female traveled by car to West Virginia to meet McClure to deliver the pills. However, when McClure got in the car, the police approached and removed them from the vehicle. [*Id.* at 6 and Ex. 1 at 267-275].

Starkling testified that she recognized McClure from at least 10 prior deliveries, which had been arranged by Defendant and Brooks. [*Id.* at 6-7 and Ex. 1 at 275]. Starkling further confirmed that she had known Brooks and had been making deliveries for him several times a week since late 2009. On cross-examination, Starkling confirmed that she had not met Defendant until late 2010. [*Id.* at 7 and Ex. 1 at 276-284, 298].

5

Defendant re-called Task Force Officer Shelton to confirm that there were no useful audio or video recordings of the February 3, 2012 controlled buy. However, she presented no other evidence. [*Id.* at 7 and Ex. 1 at 360-364, 372]. The jury thereafter returned guilty verdicts against Defendant on both counts of the second superseding indictment. [*Id.* at 7 and Ex. 1 at 413].

Defendant's sentencing hearing was held on December 9, 2013. A Presentence Investigation Report ("PSR") was prepared by the United States Probation Office, which determined that the total offense and relevant conduct attributable to Defendant was 4,136.8 kilograms of marijuana equivalency. Defendant objected to the guideline calculations on the basis that McClure's testimony was too unreliable, and that the guidelines unfairly distinguished between oxycodone and oxymorphone. [ECF No. 369 at 8 and Ex. 5 at 5].

The government noted that the proposed relevant conduct calculation had been severely reduced by the probation officer based upon the credible and substantial trial testimony of McClure and Starkling. [*Id.* at 8-9 and Ex. 5 at 6-7]. The district court agreed and overruled the objection. [*Id.* at 9 and Ex. 5 at 9-10]. The court specifically noted that it found the testimony of McClure and Starkling to be credible and that, if the jury had not so found, it likely would not have convicted Defendant on the conspiracy count. [*Id.* at 9 and Ex. 5 at 10]. The district court also overruled the objection concerning the disparity in treatment of oxycodone and oxymorphone, finding that, while the court had the discretion to disagree with such treatment, it simply chose not to do so. [*Id.*]

6

The court determined Defendant's total guideline level to be 34, with a criminal history category of III, resulting in an advisory guideline range of 188-235 months in prison. Defendant was sentenced at the bottom of the guideline range to 188 months in prison. [*Id.* at 10 and Ex. 5 at 21]. A Judgment to that effect was entered on December 19, 2013. [ECF No. 276].

On appeal, Tinney was permitted to withdraw as counsel, and Defendant was represented by new court-appointed counsel, John A. Carr. Defendant challenged the drug quantity attributed to her at sentencing based upon the district court's reliance on the "incredible testimony" of McClure and Starkling. Defendant's Judgment was affirmed on October 2, 2014. *United States v. Dawkins*, No. 14-4021, 584 F. App'x 124 (4th Cir. Oct. 2, 2014); *see also* ECF No. 337. The Fourth Circuit specifically noted that Defendant conceded that she was responsible for the drugs recovered during the controlled buy on February 3, 2012. *Id.* at 124. Defendant's petition for a writ of certiorari was denied by the Supreme Court on January 12, 2015. *Dawkins v. United States*, 135 S. Ct. 1014 (Jan. 12, 2015).

On January 20, 2016, Defendant filed the instant Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, asserting a claim of ineffective assistance of counsel by Mr. Tinney and a related claim of prosecutorial misconduct concerning the introduction of recorded telephone calls concerning the February 3, 2012 controlled buy. [ECF No. 352]. On May 6, 2016, Defendant filed the operative Addendum to her section 2255 motion, elaborating on her ineffective assistance of counsel claim. [ECF No. 363].

7

On January 21, 2016, the district court granted Defendant's motion for reduction of sentence under 18 U.S.C. § 3582(c) as a result of the November 1, 2014 retroactive amendment of the applicable sentencing guideline levels for controlled substance offenses. Thus, Defendant's total guideline level was reduced from 34 to 32 and her and her sentence was reduced to 151 months in prison. Defendant did not appeal that decision.

Following full briefing of the section 2255 motion, and the receipt of Tinney's Affidavit [ECF No. 384], as ordered by the court, this matter is ripe for adjudication.

## II. Discussion

The central focus of Defendant's section 2255 motion is her ineffective assistance of counsel claim. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two-pronged test to demonstrate a violation of the right to effective assistance of counsel guaranteed by the Sixth Amendment. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. *Id.* at 687-91. There is a strong presumption that the conduct of counsel was within the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690. This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. *Id.* at 697.

Defendant claims that Tinney's failure to call certain witnesses at trial to dispute Jason McClure's credibility was prejudicial to his defense and that, but for that error, she would have been acquitted. Defendant also generally claims that Tinney was not prepared for trial and failed to keep her informed of his trial strategy. Specifically, Defendant asserts that Tinney was ineffective for failing to call two Ohio State Troopers who were involved in McClure's arrest on January 10, 2012. Defendant contends that the testimony of these two witnesses would have contradicted statements made by McClure at trial, calling into doubt his credibility.[3]

---

[3] Defendant's reliance on the Confrontation Clause of the Sixth Amendment is misplaced.

9

Defendant further contends that Tinney was ineffective by failing to challenge McClure's testimony that he was involved in "three-way" telephone conversations with Defendant and Mack Brooks while Brooks was incarcerated. Defendant contends that Tinney should have disputed the recorded phone call evidence presented by the government with phone records from the correctional facility where Brooks was incarcerated. [ECF No. 352 at 5-6]. In her Addendum, Defendant further contends that Tinney could have called a correctional staff member from the Nobel Correctional Institution, Craig Aufdenkampe, who could have presented Brooks' phone records, which Defendant contends would eliminate Defendant as the receiver of phone calls as the "middle man" between Brooks and McClure. [ECF No. 363 at 1-2].

The Addendum further notes that, during jury deliberations, the jury sent the following question to the court: "On the phone calls, can we reach the conclusion that the voices heard are indeed Ms. Ciara Dawkins and Mr. Mack Brooks in the three-way calls from prison? Is there any objections to the identity of the voices spoken or any written proof or mutual agreement?" [ECF No. 363 at 4 (Ex. A)]. Defendant contends that this question indicates that the jury did not fully accept the credibility of that evidence and that, had Aufdenkampe testified, the outcome of the proceedings may have been different. [*Id.* at 2].

The United States' Response to Defendant's section 2255 motion asserts that Defendant's accusations of ineffective assistance of counsel are wholly unsupported by the record, which fails to show that Tinney's performance fell below an objective

standard of reasonableness resulting in prejudice to her defense. [ECF No. 369 at 12-13]. The response further states:

> In this case, defendant has not shown that calling the Ohio officers, who were present at trial after being subpoenaed by co-defendant's counsel, created a reasonable probability that the verdict would have been different. The fact remains that the jury considered the credible testimony of McClure in light of defense counsel's rigorous cross-examination. It is unlikely that calling the Ohio officers would have had any impact whatsoever on the jury verdict, especially in light of the additional testimony of Starkling. Because defendant has not shown prejudice, this Court need not consider this prong of the *Strickland* test. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

[*Id.* at 13]. Defendant's reply brief abandons any discussion of her ineffective assistance of counsel claim. [ECF No. 377].

Tinney's Affidavit indicates that, in his opinion, additional testimony from the Ohio State Troopers and/or the correctional staff would not have contradicted McClure's testimony and, in fact, he believes it would have strengthened the government's case against Defendant. [ECF No. 384 at 1]. Thus, as a matter of trial strategy, Tinney did not pursue that evidence. Tinney further asserts that "all trial strategy and preparation was discussed and conveyed to the movant." [*Id.*]

A review of the record demonstrates that there was ample evidence of Defendant's involvement in the subject drug conspiracy to support her guilt on both counts of the second superseding indictment. Furthermore, McClure's credibility was sufficiently challenged during his extensive cross-examination. Thus, the court finds that the testimony of the suggested witnesses would not have made a difference in the outcome of Defendant's criminal proceedings. Accordingly, even if Defendant

could establish that Tinney's conduct fell below an objective standard of reasonableness, she cannot demonstrate the requisite prejudice to prove a Sixth Amendment violation.

Moreover, to the extent that Defendant is also contending that the government's presentation of the phone recordings amounted to prosecutorial misconduct because Defendant's participation in those phone calls could not be verified, the United States correctly contends that this claim was waived by Defendant's failure to raise it in her direct appeal and that she has not demonstrated cause and prejudice by such failure. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-168 (1982); *Bousley v. United States,* 523 U.S. 614, 621-622 (1998); *United States v. Emmanuel*, 869 F.2d 795 (4th Cir. 1989).

Defendant's Reply brief also raises, for the first time, a claim that she was sentenced under an illegal guideline scheme. [ECF No. 377 at 2]. Defendant's claim appears to be grounded in Amendment 782 to the United States Sentencing Guidelines, which provided a retroactive two-level reduction of all drug sentences. Defendant benefited from this amendment when the court granted her Motion for Reduction of Sentence under 18 U.S.C. § 3582(c) on January 21, 2016 [ECF No. 354] and reduced her total guideline level from 34 to 32, and reduced her sentence of imprisonment to 151 months, a decision which Defendant did not appeal.

Defendant now claims that she should have been sentenced at a level 30. Her argument is misplaced as the two-level reduction in the guideline level is reflected in

lowering her applicable guideline level from 34 to 32. Thus, the guideline level to which Defendant was sentenced is correct after the amendments.

### III. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 [ECF No. 352], and the Addenda thereto [ECF Nos. 362 and 363], are **DENIED** and this civil action is **DISMISSED** from the docket of the court.

The court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 28, 2019

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13